UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| HUGO DELGADO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEW ALBERTSON'S, INC., et al.,<br><br>Defendants. | CASE NO. SACV 08-0806 DOC (MLGx)<br><br>O R D E R GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

_____

Before the Court is Plaintiff Hugo Delgado's ("Plaintiff" or "Delgado") Motion for Class Certification of Plaintiff's PAGA Action ("Motion").  After considering the moving, opposing and replying papers, as well as the parties' oral argument, and for the reasons that follow, the Court hereby GRANTS Plaintiff's Motion for Class Certification.

## I.    BACKGROUND

Plaintiff Hugo Delgado ("Delgado") was employed as an order selector at Albertson's Irvine warehouse from October 27, 2007 through January 25, 2008.  Delgado was paid hourly. He was compensated on a weekly basis and received weekly wage statements.  Delgado is no

longer employed by Albertsons.

In this action, Delgado alleged that the weekly wage statements he received while an Albertson's employee violated California Labor Code Section 226(a) because the wage statements (1) did not display the proper name of Plaintiff's employer; (2) stated an inaccurate total number of hours worked by Plaintiff in the pay period; and (3) did not state the overtime rate of pay.  Plaintiff's complaint sought relief pursuant to Cal. Labor Code Sections 226(e), 226(g) and 2699.  Under Section 226(e),[1] an "employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)" may recover damages.  Cal. Labor Code Section 2699 *et seq.* is the Private Attorneys General Act of 2004 ("PAGA").

In October and November 2009, Plaintiff moved for Class Certification and Defendants concurrently moved for Summary Judgment.  The Court ruled on both motions December 15, 2009.  The Court granted Defendants' Motion for Summary Judgment as to Plaintiff's claim pursuant to Cal. Labor Code Section 226(g) for injunctive relief as well as Plaintiff's Sections 226(e) and 2699 claims for a violation of Section 226(a)(8), the requirement that the employer include its name and address on the wage statement.  Summary judgment was denied as to Plaintiff's 226(e) and 2699 claims for a violation of Section 226(a)(2), the requirement that statements include the total number of hours worked, and Section 226(a)(9), the requirement that statements list all applicable hourly rates in effect during the pay period and the hours worked at each hourly rate.  Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Class Certification, Dkt. 65.  When discussing whether summary judgment should be granted as to Plaintiff's Section 2699 PAGA claims, the Court rejected Defendants' arguments that PAGA violated the Equal Protection Clause of the Fourteenth Amendment and the Separation of Powers Clause of the California Constitution.

After narrowing which claims were at issue through the partial grant of summary judgment, the Court then denied Plaintiff's request to certify his proposed class of "All non-

---

[1]     Unless otherwise specified, all further statutory references are to the California Labor Code.

exempt or hourly paid employees who have been employed by Defendants in the State of California within one year prior to the filing of this complaint until certification of the class in this lawsuit" for the claims brought pursuant to Section 226(e). The Court denied certification because it found that the predominance requirement of Rule 23(b)(3) had not been met. The Court found that, because an action may only be pursued under Section 226(e) if the employee has actually suffered some injury, the fact of injury for each class member went to standing and determining whether injury existed for each class member would be a particularly daunting task and requiring an individualized determination for each class member. As such, individual issues predominated over common questions.

In denying class certification, the Court noted that Plaintiff had argued in the Opposition to the Motion for Summary Judgment that the Plaintiff did not need to prove the injury requirement by pursuing their claim under PAGA. The Court declined to reach that issue as premature but invited Plaintiff to file for class certification of the PAGA claim should he so wish.

Plaintiff has now taken the Court up on its offer and has filed this Motion. Plaintiff requests that the Court grant his claim pursuant to Section 2699(f) for violations of Sections 226(a)(2) and 226(a)(9).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). A district court must engage in a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23(a). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996) (quoting *In re Am. Med. Sys.*,75 F.3d 1069, 1079 (6th Cir. 1996)). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).

In addition to satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *See, e.g.*, *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977).

## III.    DISCUSSION

Plaintiff seeks to have the Court certify the following class: "[a]ll non-exempt or hourly paid employees who have been employed by Defendants in the state of California within one year prior to the filing of this complaint until certification who have received one or more wage statements that show overtime hours, 'Night Premium' hours, 'Premium Night' hours, or 'Sunday Premium' hours as being worked." Pl.'s Mot. at 14.  The proposed class is with respect to Plaintiff's PAGA claims for violations of Cal. Labor Code §§ 226(a)(2) and 226(a)(9).

### A.    Class Definition

Defendants argue that Plaintiff's class definition, which he has revised since the Court's previous denial of certification, is not precise and cannot be identified without determination of the merits of the action.  An adequate class definition consists of "a distinct group of plaintiffs whose members could be identified with particularity." *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507 (9th Cir. 1978).  A class is not defined with particularity if, in order to ascertain the class, the court must look to "circular definitions which depend on the outcome of the litigation on the merits" and the court must "engage in an impermissible consideration of the merits." *See, e.g., In re Wal-Mart Wage & Hour Empl. Pract. Litig.,* 2008 U.S. Dist. LEXIS 50928, at \*65 (D. Nev. 2008) (rejected class defined as employees who were not properly compensated).  The classic example of an unascertainable class definition is "employees who were discriminated

4

against." The Court could not define that class until it determined if the defendants committed acts of discrimination and under what conditions. In contrast, Plaintiff's proposed class is defined through objective terms–employees within a certain time period who had certain entries on their time sheets. While those entries correspond to when Plaintiff believes Defendants violated the Labor Code, they require the Court to make no merits determinations.

At oral argument, Defendants argued that even if the class was objectively ascertainable, it was not "practically" ascertainable because it would be too burdensome and time-consuming for them to ascertain the class members. While it is true that some class certification opinions have focused on the administrative burden created by a class definition, those cases have discussed the burden *on the courts*, not the parties, and have applied that analysis to merits-driven definitions where it would be incumbent on the court to further focus the class definition through mini-trials. The fact that Defendants may have violated the Labor Code for a large number of employees over a time span that encompasses several wage statements, and that as a result it will take the parties some time to review the wage statements for all the employees to determine the class, does not provide a basis for denial of class certification.

Plaintiff's class definition is objective and ascertainable.

**B.    Numerosity**

The requirement that "the class [be] so numerous that joinder of all members is impractical" is known as the "numerosity" requirement. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is generally satisfied when the class is in excess of forty members. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982)(39 individuals likely sufficient on basis of number alone), *vacated on other grounds*, *County of Los Angeles v. Jordan*, 459 U.S. 810, 103 S. Ct. 35 (1982); *Slaven v. BP America, Inc.,* 190 F.R.D. 649, 654 (C.D. Cal. 2000); *see also e.g. Gay v. Waiters' & Dairy Lunchmen's Union* , 549 F.2d 1330 (9th Cir. 1997) (numerosity requirement met with approximately 110 potential class members); *Mullen v. Treasure Chest Casino, LLC* , 186 F.3d 620 (5th Cir. 1999) (numerosity requirement met with between 100 and 150 potential class members). The size of the putative class here is not yet determined, but there were 40,000 employees who received wage statements over the

class period.  Defendants have not challenged class certification on this basis, and the proposed class meets the numerosity requirement.

### C.     Commonality

Commonality exists where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2).  This commonality analysis is less rigorous than the companion requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp* ., 150 F.3d 1011, 1019 (9th Cir. 1998); *Local Joint Exec. Bd. of Culinary Bartender Trust Fund v. Las Vegas Sands, Inc* ., 244 F.3d 1152, 1162 n.3 (9th Cir. 2001). "All questions of fact and law need not be common to satisfy this rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *accord Staton v. Boeing Co.*, 327 F.3d 983, 952 (9th Cir. 2003).  Commonality is addressed in a more stringent manner in the predominance inquiry, so it suffices to say that the commonality inquiry for Rule 23(a)(2) is subsumed within the Rule 23(b)(3) predominance inquiry that follows.

### D.     Typicality

Typicality under Rule 23(a)(3) means that the class representative's claims must be typical of the class.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, the representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Delgado's claims are typical of the class in that the wage statements followed a common format.  In addition, unlike some cases where members of the class might have differing interests regarding the outcome of the litigation, here there is no evidence that Delgado's interest in receiving accurate and transparent wage statements would conflict with any opposing interests from other class members.

6

### E.      Adequacy of Representation

An adequate representative is one who "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires that absent class members have an adequate representative. *See Hansberry v. Lee* , 311 U.S. 32, 43, 61 S. Ct. 115 (1940). A representative is adequate where (a) there is no conflict of interest between the representative and its counsel and absent class members, and (b) the representative and its counsel will "pursue the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 120 (citing *Lerwill v. Inflight Motion Pictures, Inc.* , 582 F.2d 507, 512 (9th Cir. 1978)).

Defendants argue that Delgado is not an adequate representative for several reasons. First, they argue that Delgado is not engaged in or actively participating in the litigation. Defs.' Opp. at 14.   While Defendants expressed some concerns through Delgado's deposition testimony, the Court is satisfied by the declaration that Delgado submitted stating that he understands his duties as a class representative and has been actively participating in the lawsuit. Delgado Decl. ISO Pl.'s Mot, at ¶¶ 9-12.

Alternatively, Defendants argue that Delgado is not adequate because he has prior criminal convictions and has a unique animus against Albertson's because he has filed prior lawsuits against them. Defs.' Opp. at 14-15.  Defendants fail to cite a single case where unrelated criminal convictions served as a basis for finding that a class representative was not adequate.  The case that they do cite, *Darvin v. International Harvester Co.*, 610 F. Supp. 255 (S.D. N.Y. 1985), involved a proposed class representative who had given inconsistent testimony *in that case* such that his credibility could become the focus of cross-examination and unique defenses at trial.  *Cf. McCall v. Drive Fin. Services, LP*, 236 F.R.D. 246, 251 (E.D. Pa. 2006) (plaintiff's past felony criminal conviction was "irrelevant" to plaintiff's "ability to represent the class vigorously and responsibly").  Such credibility concerns are not applicable here.  Additionally, the Court is not persuaded that the fact that Delgado has sued Albertson's in other contexts indicates an animus that would create a conflict of interest with the class or prevent him from adequately representing the class.

To satisfy the adequacy requirement as pertaining to counsel, class counsel must also be

"qualified, experienced and generally able to conduct the litigation." *Social Servs. Union, Local 535 v. County of Santa Clara* , 509 F.2d 944, 947 (9th Cir. 1979) (footnote omitted).  The proposed Class Counsel is the law firm of Initiative Legal Group, which frequently handles class actions and specializes in wage-and-hour class actions specifically.  Primo Decl. ISO Pl.'s Mot., at ¶ 2.  As the firm has experience in class actions and wage and hour disputes, and there are no allegations that class counsel is unqualified, the court finds it competent to act as class counsel.

Adequacy of both Plaintiff and Plaintiff's counsel has been demonstrated.

### F.      Fed. R. Civ. P. 23(b)(3)

To satisfy the requirements of Fed. R. Civ. P. 23(b)(3), Plaintiffs must show (1) that common questions predominate over individual questions; and (2) class resolution is the superior form of adjudication. FED. R. CIV. P. 23(b)(3).

#### 1.      Predominance

In the previous motion for class certification, the Court turned first to the predominance inquiry under Rule 23(b)(3) and found that the predominance inquiry had not been met because the Court would have to engage in individualized inquiries regarding whether each employee member of the class was injured by a deficient wage statement.  Defendants argue that Plaintiff faces the same hurdle with certifying his PAGA claim.

As the requirement of Rule 23(b) that "common questions of law or fact predominate" and that a class action be the superior method for adjudicating the action is dispositive of the class certification, the Court turns to that factor.  The predominance requirement is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp* ., 150 F.3d 1011, 1019 (9th Cir. 1998).

Section 226(a) sets forth requirements for employers issuing wage statements.  Section 226(e) allows "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not

exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Labor Code § 226(e).

For the purposes of this certification, however, Plaintiff seeks to enforce the 226(a) requirements through a different section of the Labor Code, PAGA. PAGA provides a procedure for private litigants to enforce certain provisions of the Labor Code. Cal. Labor Code § 2699.3. An employee plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies. The act's declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves . . . In a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies-namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (Cal. 2009) (internal citations omitted). Civil penalties collected in PAGA actions are "distributed to the Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code." Section 2699(j).

For Labor Code sections that provide for a civil penalty that can be assessed and collected by the Labor and Workforce Development Agency, PAGA provides that instead of the Agency collecting the penalty, an aggrieved employee may bring a civil action to collect the penalty on behalf of himself or herself and other current or former employees. Cal. Labor Code § 2699(a). For Labor Code sections for which a civil penalty is not specifically provided, PAGA provides a civil penalty for employers with one or more employees in the amount of one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation. *Id.* § 2699(f).

Defendants argue that PAGA is another mechanism for Plaintiff to enforce violations of Section 226(a) but that Plaintiff is still limited to recovering the penalties set forth in Section 226(e) and is bound by Section 226(e)'s requirement that each employee suffer each injury. Plaintiff argues that the $50-$100 penalties provided for under Section 226(e) are private

statutory penalties, not civil penalties, and therefore PAGA's provision for sections of the Labor Code that do not provide for a civil penalty apply.

Not all penalties provided for in the Labor Code are "civil penalties" as covered by PAGA, and statutory penalties recoverable by aggrieved employees should be differentiated from civil penalties which prior to PAGA "could be assessed only by state agencies." *Dunlap v. Superior Court*, 142 Cal. App. 4th 330, 336 (Cal. Ct. App. 2006); *see also Thomas v. Home Depot, Inc.*, 527 F. Supp. 2d 1003, 1006 (N.D. Cal. 2007) (discussing the difference between the provision of statutory and civil penalties in the Labor Code). Section 226 does not provide any civil penalties available only to state agencies. Therefore, violations of Section 226(a) are enforced through PAGA Section 2699(f), which sets forth $100-$200 penalties, and are not dependent upon Section 226(e).

Defendants argue that, in any event, an action brought for a violation of Section 226(a) under PAGA requires the same showing of individual employee injury as required under Section 226(e). When interpreting statutes allowing for a mandatory penalty, the court is to "adopt the narrowest construction of its penalty clause to which it is reasonably susceptible in the light of its legislative purpose." *Starbucks Corp. v. Superior Ct.*, 168 Cal. App. 4th 1436, 1450 (Cal. Ct. App. 2008) (quoting *Hale v. Morgan*, 22 Cal. 3d 388, 405 (Cal. 1978)). In *Starbucks,* the trial court had interpreted the statutory penalty provision of Labor Code Section 432.7, which prohibits employers from asking certain questions about past marijuana convictions in employment applications, to allow plaintiffs who had to fill out the application but did not have past convictions to recover the penalty. The California Court of Appeal rejected that reading of the statute, finding that persons without convictions were not within the class of persons intended to be protected by the legislation and that to find otherwise would result in a "veritable financial bonanza for litigants like plaintiffs who had no fear of stigmatizing marijuana convictions" and would raise concerns of unconstitutionally excessive penalties. *Id.* at 1449.

Defendants argue that the reasoning of *Starbucks* dictates that the Court look to the intent of Section 226, and that if the scope of persons intended to be protected by the litigation are only those who suffered injury through an inaccurate wage statement, then only those persons who

suffered injury may be determined to be "aggrieved" under PAGA and be able to recover penalties. In support of that argument, Defendants cite extensively to legislative history from the passage of Section 226 in the 1970s. However, this analysis is complicated by the fact that the Court is looking at the enforcement of Section 226 through PAGA, which has its own legislative purpose. PAGA was passed in 2004. Even if the California legislature originally intended that Section 226(a) only be enforced in civil actions through employees who suffered injury through the violations, the later-enacted PAGA provides for a different mechanism through which employees may bring civil actions to enforce Section 226(a).

The purpose of PAGA was to boost enforcement of the Labor Code because state agencies lacked resources. Employees step into the shoes of the state agency, so the rights are different from those that an employee would have acting exclusively in his own interest. Under PAGA, the employee "represents the same legal right and interest as state labor law enforcement agencies," and the actions are "'fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" *Arias*, 46 Cal. 4th at 986 (quoting *People v. Pacific Land Research Co.*, 20 Cal.3d 10, 17 (Cal. 1977)).

By the language of the statute, actions may be brought by any "aggrieved" employee. An "aggrieved employee" under PAGA is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Section 2698(c). In this case, Section 226(a) sets forth the relevant violations. Through Section 226(a), the state legislature has provided standards for transparent and clear wage statements. Through PAGA, the state legislature has found that these standards should be enforced by employees because the state labor agency is too under-resourced to do so entirely on its own. PAGA defines the class of persons who can step into the labor agency's enforcement role to be employees who received wage statements that do not meet these standards.

PAGA does not define an "aggrieved" employee as someone who has suffered injury within the meaning of Section 226(e). In addition, PAGA's purpose indicates that a wider class of persons intended to be protected by the statute than by Section 226(e). Given that PAGA envisions employees functioning in an entirely different role in that they are representing the

11

same interest as state labor agencies, and seeks civil penalties, 75% of which are recovered by the state and only 25% of which go to the employees, the legislature had good reason to develop a different definition of which employees could bring actions.

The Court is cognizant that this reading of the statute could lead to liability for a large penalty given the large number of employees and potential violations in this matter. However, the legislature expressly contemplated that possibility and intended to protect against it through Section 2699(e)(2), which states, "a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." This provision limits the potential for unconstitutionally excessive penalties in a similar way to allowing only those employees who have "suffered injury" within the meaning of Section 226(e) to sue. To read in the additional "suffering injury" requirement would lead to a construction that is not consistent with PAGA's legislative purpose. Therefore, the Court finds that employees seeking to prosecute violations of Section 226(a) need not meet the "suffering injury" requirement of Section 226(e).

The primary obstacle to achieving certification in the Court's previous order was the individualized inquiry necessary to determine if each employee within the class suffered injury within the meaning of Section 226(e). That obstacle no longer exists under PAGA. In addition, Plaintiff has revised the class definition such that if Plaintiff's theory of liability is correct, all members of the class would have been subject to at least one violating wage statement. The Court could look to the common issue of whether wage statements formatted in a common way, as set forth by the practice of Albertson's at that time, violated Section 226(a). The remaining issue–how many wage statements for each employee violated Section 226(a)–would go to the amount of the damages, not to liability. Therefore, the Court finds that common issues predominate over individualized issues.

### 2. Superiority

The Court must also assess Rule 23(b)(3)'s second requirement that "a class action is a superior method for fairly and efficiently adjudicating the action." Fed. R. Civ. P. 23(b)(3).

12

This inquiry tests whether "the objectives of the particular class action procedure will be achieved in the particular case. This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (internal citation omitted). A court considers the following factors in the superiority inquiry: (1) prospective class members' interest in individually litigating their claims; (2) litigation already commenced concerning the controversy; (3) the desirability of litigating the claims in the particular forum; and (4) difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3). Bringing wage and hour disputes in a class action format is generally desirable because the amount of individual recovery is small enough that bringing an individual action is cost prohibitive. *See Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004). Additionally, the state legislature, in enacting PAGA, expressed the desirability of employees bringing representative actions to enforce the labor code and supplement the resources of the state labor agency.

Additionally, the Court is not aware of any other existing litigation regarding these issues and this particular forum is sufficiently well-suited for the litigation as Defendants' business is located in this district, with many class members also living in the district. Pl.'s Mot. at 19-20.

Finally, the Court finds that while the class is potentially large, it is manageable given the predominance of common issues. Even if the Court reaches the issue of damages, determining damages will be a mechanized inquiry that involves looking at each wage statement.

The superiority requirement has been satisfied.

## V.    DISPOSITION

For the foregoing reasons, Defendants' Motion for Class Certification is GRANTED for Plaintiff's Private Attorney General Act claim based on Section 226(a)(2) and (a)(9) violations.


IT IS SO ORDERED.

DATED: March 15, 2010

*David O. Carter*

_____

DAVID O. CARTER

United States District Judge